*NOT FOR PUBLICATION*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| IRWIN KATZ & ASSOCS., INC., | |
| Plaintiff, | |
| v. | Civ. Action No.: 3:13-cv-1217(FLW)(LHG) |
| CONCEPTS IN HEALTH, INC. and HOLLY ROSENTHAL, | **OPINION** |
| Defendants. | |

**WOLFSON, United States District Judge:**

Plaintiff Irwin Katz & Assocs., Inc. ("Plaintiff") brings this action for breach of contract and breach of the covenant of good faith and fair dealing, alleging that Defendants Concepts in Health, Inc. ("CIH") and Holly Rosenthal ("Rosenthal") (collectively "Defendants") by failing to provide compensation upon the sale of, *inter alia*, one of CIH's products, the MidNite Brand. Defendants bring the present Motion for Reconsideration following this Court's opinion dated November 18, 2014, which granted summary judgment on Counts I (breach of contract) and III (reformation), but denied summary judgment as to the claim for breach of the covenant of good faith and fair dealing (Count II) and the personal liability of Holly Rosenthal. Defendants seek reconsideration on the sole remaining count, asserting that there has been no showing of ill motive or bad faith. For the reasons expressed below, the Motion for Reconsideration is denied.

**FACTUAL BACKGROUND**

As the November Opinion went into considerable detail on the underlying facts of this case, only a brief recitation of the relevant facts is necessary here.

1

Irwin Katz ("Katz"), the President and sole shareholder for the Plaintiff company, performed consulting services for Defendants, pursuant to a 2007 Agreement. The final version of the agreement provided that Plaintiff would receive "a percentage of the Proceeds of Sale of the Company," with the exact percentage to be determined based on an "earn-in" schedule, and capped at 4%. The Agreement defined "Proceeds of Sale" as "all outright or timed payments made in exchange for ownership of the company and the right to market the MidNite and all other of the company's brands as a result of the sale of the company after all loans to the company and payments to capital partners have been paid."

At the time the Agreement was signed, CIH's business consisted solely of selling "Midnite," a natural sleep aid developed by Rosenthal. In or around February 2011, CIH introduced the NatuRelief brand, an analgesic providing relief for minor pain. In or around April 2011, CIH introduced Nature Garden, a form of MidNite for dollar outlets.

Rosenthal wished to sell CIH, and worked with an investment group, Sawaya Segalas and Co. LLC, for that purpose. After one potential sale of CIH fell through, on June 24, 2012, a member of the Sawaya team sent an internal email asking why "we are not selling assets here potentially"; however, another team member responded that Rosenthal's intent was "focused on the CIH entity."

In July 2012, Katz asked Rosenthal if there would be an increase in the compensation percentage because the 4% cutoff date, August 1, 2011, had occurred almost a year earlier. A disagreement followed regarding the amount of compensation owed, with Rosenthal initially asserting that Katz was entitled only to a 2.5% "bonus." Katz emailed Rosenthal a copy of the signed Agreement. At her deposition, Katz stated that, upon receiving the Agreement, she realized that Katz would be entitled to 4% upon a sale of CIH, but would not be entitled to any

compensation in the event of an asset sale. Thus, any amount she gave him in that event would be a bonus.

On July 19, Rosenthal emailed her financial consultants, indicating that she "took it upon myself yesterday to calculate my own 'carve out' of NatuRelief expenses." On December 6, 2012, CIH entered into an Asset Purchase Agreement with Meda Consumer Healthcare, Inc. and Meda AB (collectively "Meda"). CIH sold the MidNite brand line, the Nature Garden brand line, and a CVS house brand to Meda; the NatuRelief brand was specifically omitted from the transaction. Rosenthal retained ownership of CIH, and the consideration was paid to CIH.

Following this sale, Katz emailed Rosenthal to ask about his compensation; Rosenthal later testified that, in an oral conversation, she informed Katz that he was not eligible for payment under the Agreement, but that she intended to give him a bonus. Katz sent a letter to Rosenthal disputing this interpretation of the Agreement; Rosenthal terminated Katz's services to CIH a few days later. This action followed.

On September 19, 2013, Plaintiff submitted an Amended Complaint, alleging breach of contract (Count I), breach of the implied covenant of good faith and fair dealing (Count II), and, in the alternative, reformation of contract (Count III). Following discovery, Defendants filed a Motion for Summary Judgment, which Plaintiff opposed. Defendants argued the following: on Count I, the only reasonable interpretation of the contract shows that there is no breach of contract; on Count II, that there is no evidence of ill motive to support a claim for a breach of the implied covenant of good faith and fair dealing; and on Count III, there was no unconscionable conduct entitling Plaintiff to reformation. Additionally, Defendants asserted that Rosenthal was not a proper party, and claims against her should be dismissed.

On November 18, 2014, this Court granted summary judgment on Counts I and III, but denied summary judgment on Count II and with regard to the personal liability of Rosenthal. Defendants now move for reconsideration of the Court's decision on Count II.

**DISCUSSION**

Defendants argue that the Court should reconsider its determination that a genuine issue of fact is present with regard Count II, the breach of the covenant of good faith and fair dealing. According to Defendants, Plaintiff failed to meet its initial burden, and did not make a showing of ill motive or bad faith.

Local Civil Rule 7.1(i) governs motions for reconsideration and requires the moving party to "set[ ] forth concisely the matter or controlling decisions which the party believes the Judge or Magistrate Judge has overlooked[.]" L. Civ. R. 7.1(i). The burden on the moving party is quite high and reconsideration is granted very sparingly. To prevail on such a motion, the movant must demonstrate either: "(1) an intervening change in controlling law; (2) the availability of new evidence; or (3) the need to correct [a] clear error of law or prevent manifest injustice." *Lazaridis v. Wehmer,* 591 F.3d 666, 669 (3d Cir. 2010).

Notably, a motion seeking reconsideration may not be used by a party to "restate arguments that the court has already considered." *Lawrence v. Emigrant Mortg. Co.,* Civ. No. 11–3569, 2012 WL 5199228, *2 (D.N.J., Oct. 18, 2012). Nor may be such a motion be used "to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment." *NL Indus., Inc. v. Comm. Union Ins. Co.,* 935 F. Supp. 513, 516 (D.N.J.1996). In other words, "[a] motion for reconsideration should not provide the parties with an opportunity for a second bite at the apple." *Tishcio v. Bontex, Inc.,* 16 F.Supp.2d 511, 532 (D.N.J.1998) (internal citation omitted). Further, where a party merely has a difference of

4

opinion with the court's decision, the issue should be raised through the normal appellate process; reconsideration is not the appropriate vehicle. *Dubler v. Hangsterfer's Laboratories,* Civ. No. 09–5144, 2012 WL 1332569, *2 (D.N.J., Apr. 17, 2012) (citing *Bowers v. Nat'l Collegiate Athletic Ass'n,* 130 F. Supp. 2d 610, 612 (D.N.J.2001)). Thus "[t]he only proper ground for granting a motion for reconsideration, therefore, is that the matters or decisions overlooked, if considered by the court, might reasonably have altered the result reached" *G-69 v. Degnan*, 748 F. Supp. 274, 275 (D.N.J. 1990)

Applying the above legal standards, Defendant's Motion for Reconsideration fails. Defendant's assertion that Plaintiff did not make a showing of ill motive or bad faith is precisely the argument raised in the original Motion for Summary Judgment. *See* Def. Mot. for Summ. Judg. at 19–23. However, "[t]o support reargument, a moving party must show that dispositive factual matters or controlling decisions of law were overlooked by the court in reaching its prior decision." *Assisted Living Associates of Moorestown, L.L.C., v. Moorestown Twp.*, 996 F.Supp. 409, 442 (D.N.J.1998). Here, Defendants attempt to meet this requirement by asserting that this Court incorrectly held that a statement made by Rosenthal in an affidavit—in which she stated that the sale to Meda was structured as an asset sale based on the advice of her investment bankers—was hearsay. Defendants argue that the statement was offered not for its truth, but to show that the advice was, in fact, given to her, and therefore is not hearsay. Def. Mot. for Recon. at 2.

It is true that "[i]f the significance of an offered statement lies solely in the fact that it was made, no issue is raised as to the truth of anything asserted, and the statement is not hearsay" *Gonzalez v. Sec'y of Dep't of Homeland Sec.*, 678 F.3d 254, 262 (3d Cir. 2012) (quoting Fed. R. Evid. 801(c), advisory committee's note). However, even if this evidence is admissible, it does not negate the dispute of fact regarding Rosenthal's intent. The timing of Rosenthal's decision to

5

consider an asset sale—immediately after Rosenthal reviewed the Agreement, and after Katz had pressed her on his compensation following a sale—could lead a reasonable jury to conclude that her motivation was to deny Katz his "reasonably expected fruits under the contract." *Wilson v. Amerada Hess Corp.*, 168 N.J. 236, 251 (2001). The fact that the some evidence of a different motivation appears in, and only in, Rosenthal's self-serving testimony is insufficient for Defendants to meet their burden of showing that no genuine dispute of material fact exists on this point. *See Jordan v. Cicchi*, Civ. No 10-4398, 2014 WL 2009089, at *2 (D.N.J. May 16, 2014) ("the issue is not whether Plaintiff has relied solely on his own testimony to challenge [a summary judgment motion], but whether Plaintiff's testimony, when juxtaposed with the other evidence, is sufficient for a rational factfinder to credit Plaintiff's testimony, despite its self-serving nature." (quoting *Johnson v. MetLife Bank, N.A.*, 883 F.Supp.2d 542, 549 (E.D. Pa. 2012)).

Moreover, in the November Opinion, this Court also found that a jury could find that "Rosenthal 'withheld vital information from plaintiff with the purpose of exploiting the terms of the contract.'" November Op. at 21 (quoting *Brunswick Hills Racquet Club, Inc. v. Route 18 Shopping Ctr. Associates*, 182 N.J. 210, 227 (2005)). This finding would be a sufficient reason to deny summary judgment, and Defendants have not challenged it. Thus, because Defendants' argument cannot "reasonably have altered the result reached," *G-69*, 748 F. Supp. at 275, reconsideration is not appropriate.[1]

---

[1] Defendants request permission to submit an affidavit from Sewaya Segalas in order to avoid further proceedings. Def. Mot. for Recon. at 4. However, this Court's prior decision does not solely turn on the lack of evidence from Sewaya; the possibility that Rosenthal withheld information from Katz to exploit the terms of the contract is sufficient, on its own, to deny summary judgment. Moreover, Defendants give no explanation as to why such evidence could not have been submitted with the original Motion for Summary Judgment; it would therefore be inappropriate for the Court to consider it on a Motion for Reconsideration. *See Blystone v. Horn*, 664 F.3d 397, 415–16 (3d Cir. 2011) ("'[N]ew evidence,' for reconsideration purposes, does not

Defendants further argue that summary judgment was improper because "Katz admitted under oath that he has absolutely no evidence of bad faith in connection with the asset sale." Def. Mot. for Recon. at 2. However, Katz's personal knowledge of the existence of evidence showing bad faith is not the relevant standard for summary judgment; rather, Defendants must point to "materials in the record" that show that a fact cannot be genuinely disputed. *See* Fed. R. Evid. 56(c)(1). This Court, upon looking at the record, found that a genuine dispute of fact existed, based on the timing of Rosenthal's decision to structure the sale as an asset sale, the lack of record evidence as to advice from her financial advisors on that point, and Rosenthal's withholding of information from Katz as to the nature of the sale and its effect on Katz's compensation. *See* November 18 Opinion at 20–21. Katz's statement that he, personally, did not have evidence of bad faith—when he may not be in possession of relevant information in Defendants' possession—is not sufficient to show that no dispute of fact existed.

**CONCLUSION**

For the reasons expressed herein, Defendant's Motion for Reconsideration is denied. An appropriate Order shall follow.

Date: July 13, 2015

                                          _/s/ Freda L. Wolfson_____
                                              Hon. Freda L. Wolfson, U.S.D.J.

---

refer to evidence that a party submits to the court after an adverse ruling. Rather, new evidence in this context means evidence that a party could not earlier submit to the court because that evidence was not previously available."). Accordingly, permission to submit an affidavit from Sewaya is denied.